IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KAREN B.,[1] | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:22-CV-711 |
| | ) |
| v. | ) |
| | ) REPORT & RECOMMENDATION |
| MARTIN O'MALLEY,[2] | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) By: C. Kailani Memmer |
| | ) United States Magistrate Judge |
| Defendant. | ) |

Plaintiff Karen B. ("Karen") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income benefits ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

Having considered the administrative record, the parties' filings, and the applicable law, I find that the Commissioner's decision is not supported by substantial evidence. Accordingly, and for the reasons detailed below, I respectfully recommend that the presiding District Judge **GRANT** Karen's Motion for Summary Judgment, ECF No. 12; **DENY** the Commissioner's

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.
[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

Motion for Summary Judgment, ECF No. 14; **REMAND** the Commissioner's final decision denying Karen's SSI claim; and **DISMISS** this case from the Court's active docket.

## STANDARD OF REVIEW

The court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Karen failed to demonstrate that she was disabled under the Act.[3] *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F. 2d 1453, 1456 (4th Cir. 1990).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period for not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work; instead, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

In contrast, remand is appropriate if the Administrative Law Judge's ("ALJ") analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). The ALJ must sufficiently articulate her findings such that the district court can undertake meaningful review. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

## CLAIM HISTORY

Karen filed for Title XVI SSI on October 19, 2020, claiming that her disability began on June 20, 2012. R. 178–93.[4] R. 20. Karen's claims were denied by the Commissioner at the initial and reconsideration level of administrative review. R. 79–91. On February 15, 2022, ALJ Paula Wordsworth held an administrative hearing to consider Karen's claims. R. 28–50. Counsel represented Karen at the hearing, which included testimony from Karen and vocational expert Sandra M. Bruff. *Id*. On March 2, 2022, the ALJ entered a decision analyzing Karen's claims under the familiar five-step process[5] and denying her request for benefits. R. 10–18.

At the first step, the ALJ found Karen had not engaged in substantial gainful activity since October 19, 2020, the alleged onset date. R. 12. At the second step, the ALJ found Karen

---

[4] At the February 15, 2022 administrative hearing, Karen requested her alleged disability onset date be amended to her filing date, October 19, 2020. R. 34.
[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); *Heckler v. Campbell,* 461 U.S. 458, 460-62, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the national economy. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

has the following severe impairments: history of left shoulder arthroscopy; cervical degenerative disc disease (DDD); hypertension (HTN); major depressive disorder (MDD); and generalized anxiety disorder (GAD). *Id*. As to the third step, the ALJ found that Karen's impairments, either individually or in combination, did not meet or equal a listed impairment. R. 12–13. Regarding Karen's mental impairments, the ALJ found that Karen had mild restrictions in understanding, remembering, and applying information; moderate limitation in social functioning; moderate limitation in maintaining concentration, persistence, or pace; and a moderate limitation in adapting and managing herself. R. 13.

The ALJ determined that Karen retained the residual functional capacity ("RFC") to perform light work except she can occasionally climb stairs and ramps; never climb ropes, ladders, and scaffolds; occasionally crouch, stoop, kneel, and crawl; occasionally reach overhead with her left upper extremity and frequently reach in all other directions with her left upper extremity; frequently finger with her left upper extremity; occasionally push and/or pull with her bilateral lower extremities; avoid concentrated exposure to workplace hazards that include unprotected heights and moving machinery; and occasionally have contact with supervisors, coworkers, and the public. R. 14. The ALJ further concluded that Karen can work in a position with simple routine, repetitive tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes in a low stress environment and a reasoning level of 1 or 2. *Id*.

At the fourth step, the ALJ determined that Karen could not perform her past relevant work as a storage rental clerk. R. 16. At the fifth step, the ALJ found that Karen could perform jobs that exist in significant numbers in the national economy, such as assembler, laundry folder, and housekeeper. R. 17. Thus, the ALJ concluded a finding of "not disabled" was appropriate.

R. 18. Karen appealed the ALJ's decision, and on October 11, 2022, the Appeals Council denied her request for review. R. 1–6. This appeal followed.

## FACTS

Karen was born on February 19, 1969, R. 17, which classifies her as an individual closely approaching advanced age under 20 C.F.R. § 416.963(c). She has a high school education and completed one year of college. R. 228. Karen previously worked as a storage rental clerk and sales representative. R. 16, 228.

In rendering her decision, the ALJ reviewed medical records from Acts Medical Clinic, Triangle Orthopaedic Associates, P.A., EmergeOrtho, P.A., WakeMed, and FamHealth Primary Care, P.A. R. 317–756.

### I.   Medical Treatment

On June 5, 2012, Karen was involved in a motor vehicle accident which resulted in chronic axial neck pain. R. 442. Karen received an MRI of her cervical spine immediately following the accident which showed

> fairly significant degenerative changes at the C4-5, C5-6, C6-7 discs. At C5-6 moderate central canal stenosis and bilateral accident foraminal narrowing. At C6-7 mild broad base disc . . ., mild central canal stenosis, mild to moderate left sided exit canal stenosis. C7-T1 disc level unremarkable.

*Id*. Karen had a consult at Raleigh Neurosurgical Clinic on June 8, 2012, and was recommended conservative management with a diagnosis of cervical strain. *Id*. On July 25, 2013, Karen underwent a left shoulder arthroscopy, rotator cuff repair, as well as removal of a foreign body related to the motor vehicle accident. R. 329–31.

Karen received an additional MRI of her cervical spine on May 15, 2014, and the results showed no fractures or spinal cord impingement. *Id*. Her medical record reflects Karen has moderate to severe disc degeneration at C5-6 and C6-7 with bilateral foraminal narrowing worse

at C5-6, and unremarkable disc levels at C7-T1. *Id*. She had a consult at UC Neurosurgery in July 2014 and was recommended conservative management. *Id*.

From March 2013 through April 2021, Karen received treatment for a number of medical conditions, including muscle aches, weakness, arthralgias, joint pain, neck pain, back pain, shoulder pain, left ankle pain, swelling in extremities, numbness, balance issues, headaches, depression, sleep disturbance, anxiety, fatigue, mood disturbance, night sweats, weight gain, palpitations, known heart murmur, chest pain on exertion, migraines, and shortness of breath. *See* R. 332–434, 673–713. She was regularly prescribed medications for pain and swelling, including Cyclobenzaprine, Narcan, Percocet, Prednisone, and Prilosec. *Id*. At times she participated in physical therapy and has also received injections to assist in reducing her pain. *Id*.

As for her psychosocial conditions, Karen's medical records reflect she has a history of anxiety disorder beginning at 17 years old. R. 443. She also struggles with chronic depression. *Id*. She has been "benzodiazepine dependent" since she was 17 years old and has been on a daily dose of Klonopin "for decades." *Id*. She was also prescribed Wellbutrin, Zoloft, and Lexapro at times. R. 332–434, 673–713.

On January 27, 2020, Karen saw Robert E. Clayton, M.D., to be evaluated for generalized anxiety disorder. R. 687–88. Dr. Clayton's appointment notes reflect Karen was originally diagnosed with anxiety disorder "more than 5 years ago." R. 687. He further noted her symptom complex includes apprehension and palpitations, she does not experience "true" panic attacks, her symptoms are "nearly constant," there are no apparent triggers that increase her anxiety, her current treatment included benzodiazepine, and she was "[o]ver all doing well with meds." *Id*. Upon review of her symptoms, she was positive for anxiety and feelings of stress. *Id*. Karen was prescribed Klonopin, 2mg daily, to treat her anxiety. R. 688.

On August 3, 2020, Karen saw Dr. Clayton for a follow-up appointment regarding her generalized anxiety disorder. R. 689–90. Karen had a dry cough at this appointment, and she reported aching and burning pain in her esophagus, along with an acidic taste in her mouth, nocturnal reflux and nausea. R. 689. Upon review of her symptoms, she reported acid reflux symptoms (acid taste in mouth) and heartburn, as well as anxiety and feelings of stress. *Id*. Her Klonopin prescription was refilled. R. 690.

On October 5, 2020, Karen saw Mary Hamlin Womble, P.A.-C., for complaints of pain, along with numbness, problems with balance, anxiety, and depression. R. 447–53. Upon examination, she was under no acute distress but had mild crepitus of the left knee. R. 450.

On January 4, 2021, Karen saw Eugenia Zimmerman, M.D. R. 439–45, 749–55. Karen complained of a variety of pain issues, as well as concerns related to her anxiety and depression. R. 441. Specifically, Karen claimed she had continued severe sharp pain in her low back radiating into her right buttock and right posterior knee for the past six weeks. *Id*. She also complained of sharp pain the middle of her left knee that hurts when she goes from sitting to standing, as well as squatting. *Id*. She further complained of both feet swelling and swelling in her left leg. *Id*. At this appointment, she was taking Zoloft, 50 mg daily, Wellbutrin XL, 300 mg daily, and Klonopin for her mental health diagnoses. *Id*. During examination, she reported arm pain on exertion, heart murmur, muscle aches, muscle weakness, arthralgias/joint pain, back pain, swelling in the extremities, weakness, numbness, headaches, depression, sleep disturbances, and fatigue. R. 441–42. Dr. Zimmerman recommended medication for her back pain flare up, along with walking 10 minutes two or three times per day, and to continue her baseline medication of Percocet and cyclobenzaprine at bedtime, as needed. R. 443. He further recommended Karen continue her prescriptions for Wellbutrin and Zoloft, but to seek further

7

guidance from her primary care physician regarding any other medication she could be prescribed for her mental health conditions. R. 444. Karen was advised to schedule an appointment in three months for reevaluation. *Id*.

On February 8, 2021, Karen saw Dr. Clayton for a follow up appointment. R. 691–92. Karen reported complaints of acidic taste in her mouth, nocturnal reflux and nausea, anxiety and depression, and increased weight gain. Upon examination, Karen was noted to be anxious. R. 692. Karen's prescription for Klonopin was refilled and she was prescribed phentermine for weight loss. *Id*.

On March 11, 2021, Karen saw Dr. Clayton for complaints of chest and nasal congestion and cough, along with "rhonchi heard throughout" upon the respiratory examination. R. 717–18. Karen was prescribed medication to treat her symptoms. R. 718.

On April 5, 2021, Karen had a telephonic appointment with Dr. Zimmerman and reported complaints of arm pain on exertion, palpitations, heart murmur, muscle aches, muscle weakness, arthralgias/joint pain, back pain, swelling in extremities, weakness, numbness, headaches, depression, and sleep disturbances. R. 743–49. She continued to complain "a great deal" of left knee and leg pain stating it hurt to do sit to stand transfers. R. 745. She reported she continued to have swelling in her feet intermittently. *Id*. She also noted her back and neck were "not good," and that her "stressors [were] making it worse." *Id*. Dr. Zimmerman increased Karen's Zoloft to 100 mg per day and continued her other prescriptions. R. 748.

## **ANALYSIS**

Karen alleges the Administrative Law Judge ("ALJ") erred in her decision denying Karen benefits claiming the following assignments of error: (1) the ALJ's RFC determination is unsupported by substantial evidence as she failed to properly evaluate the opinion evidence, and

8

(2) the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to adequately develop the record, including re-contacting consultative examiner Lori J. Downing, Psy. D., for a completed evaluation.

    I.    **The ALJ's analysis of the medical opinions of the state agency consultants is not supported by substantial evidence**

Karen alleges the ALJ failed to properly analyze the medical opinions of the state agency consultants. Specifically, Karen claims the ALJ failed to properly analyze the supportability of the medical opinions provided by the state agency consultants as required under 20 C.F.R. § 416.920c. I agree.

Because Karen applied for disability benefits on or after March 27, 2017, the ALJ cites the new social security regulations for evaluating medical opinions. *See* R. 16. Under the new regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Rather, the ALJ must consider the persuasiveness of all medical opinions in the record using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. *See* 20 C.F.R. § 404.1520c(c).

Although an ALJ may consider all five factors, the most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). The supportability factor focuses on the information relied upon and explanation provided to endorse the medical source's findings: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor compares the source's findings to evidence from other sources: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources

9

in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ **must** explain in her decision how she considered the supportability and consistency factors for each medical opinion in the record. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The ALJ may, but does not need to, explain how she considered the other three factors. *Id*. As always, the ALJ's decision must build an accurate and logical bridge between the evidence and the ALJ's conclusion that a medical opinion is or is not persuasive evidence of the claimant's allegedly disabling medical condition. *See Oakes v. Kijakazi*, 70 F.4th 207, 212–13 (4th Cir. 2023).

On March 30, 2021, David R. Mullen, Ph.D., a state agency physician, completed an initial review of Karen's medical record regarding her mental impairments. R. 55–56, 59–61. Dr. Mullen opined that Karen had mild limitations in understanding, remembering, and applying information, as well as interacting with others. R. 55. Dr. Mullen further opined that Karen had moderate limitations in concentrating, persisting, or maintaining pace, as well as adapting or managing herself. R. 55–56. Dr. Mullen concluded that Karen could maintain concentration, persistence, and pace to stay on task for 2-hour periods during a typical 8-hour workday, as required to perform simple, routine, repetitive tasks. R. 60. Further, Dr. Mullen opined that Karen would be able to adapt to changes in simple, routine, and repetitive tasks in a relatively stable work setting that is also relatively undemanding. *Id*.

On September 23, 2021, Linda Tyrell, Psy.D., a state agency physician, conducted a review of Karen's medical record regarding her mental impairments. R. 66. Dr. Tyrell opined that Karen had mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing herself. *Id*. Dr. Tyrell further opined that

10

Karen had moderate limitations in concentrating, persisting, or maintaining pace. *Id*. Dr. Tyrell further opined that Karen would do best in a "no public contact setting." R. 70. Otherwise, Dr. Tyrell concurred with Dr. Mullen's opinions regarding Karen's limitations.

On April 26, 2021, Melvin Clayton, M.D., a state agency physician, completed an initial review of Karen's medical record regarding her physical impairments. R. 59. Dr. Clayton opined that Karen could lift and/or carry 20 pounds on an occasional basis and 10 pounds on a frequent basis. R. 57. Dr. Clayton further opined that Karen could stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour work day; stoop occasionally; frequently reach in all directions on her left upper extremity; and should avoid concentrated exposure to noise and hazards (machinery, heights, etc.). R. 57–58. On August 3, 2021, Edward Woods, M.S., a state agency physician, conducted a review of Karen's medical record regarding her physical impairments upon reconsideration and concurred with Dr. Clayton's limitations. R. 67–69.

Although the ALJ correctly states the applicable legal standard regarding the consideration of medical opinions, she fails to appropriately analyze one of the two required factors – supportability. *See* R. 16. To start, although technically not required, the ALJ did not even summarize Dr. Clayton's and Dr. Woods' findings in her decision. Rather, she provides the following brief statements regarding the persuasiveness of the state agency physical and mental assessments:

> The undersigned found the State agency physical assessments persuasive, as they are consistent with the overall longitudinal record, which reflects no major findings on several physical exams including Exhibit 8F. The undersigned found the State agency mental assessments persuasive. The record does not support more than moderate mental health limitations. This is primarily due to the record being devoid of major mental health treatment on the part of the claimant.

11

R. 16. Notably missing from the ALJ's decision regarding the state agency assessments is the required explanation regarding the supportability of such opinions. Rather, her short statement focuses entirely on the consistency factor by comparing the medical opinions to Karen's overall medical record. Further, such brief conclusory statements do not provide the Court with the ability to meaningfully review how the ALJ reached her conclusion regarding the persuasiveness of the opinions. Accordingly, such legal error of failing to apply the applicable legal standard under 20 C.F.R. § 404.1520c and the failure to create a logical bridge between the evidence and the ALJ's conclusion that the medical opinions are persuasive require remand. *See Derek L. v. Kijakazi*, No. 3:20-CV-00070, 2022 WL 636410, at *7 (W.D. Va. Mar. 3, 2022) (recommending remand where the ALJ failed to articulate any findings as to the supportability of a medical opinion); *Oakes*, 70 F.4th at 212–13.

    II.    **The ALJ's RFC determination and failure to re-contact consultative examiner Lori J. Downing, Psy. D., is not supported by substantial evidence**

Karen argues the ALJ failed to adequately develop the record regarding Karen's RFC regarding her mental impairments, including the failure to recontact the consultative examiner, Lori J. Downing, Psy. D., for a completed Mini-Mental State Examination (MMSE). ECF No. 12, at 22–27. The Commissioner claims the record contained sufficient information to permit the ALJ to reach her conclusion regarding Karen's RFC and results from the MMSE would not affect the outcome of the ALJ's decision. ECF No. 15, at 18–20.

In general, it is the claimant's responsibility to prove that he or she is disabled. *See* 20 C.F.R. § 416.912(a)(1). Before making a determination regarding a claimant's disability, the Commissioner will develop the claimant's complete medical history for at least the 12 months

12

preceding the month in which the claimant filed for disability.[6] *See* 20 C.F.R. § 416.912(b)(1). Regarding the ALJ's duty to order a consultative examination, the regulations specify that the ALJ "*may* decide to purchase a consultative examination" in certain circumstances. 20 C.F.R. §§ 404.1519a(a), 416.919a(a) (emphasis added). A consultative examination may be warranted "to try and resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on [a claimant's] claim." 20 C.F.R. § 416.919a(b). For example, an ALJ may decide to purchase a consultative examination when (1) the "additional evidence needed is not contained in the records of [the claimant's] medical sources"; (2) "[t]he evidence that may have been available from" the treating physician or "other medical sources cannot be obtained" for reasons beyond the claimant's control, such as "death or noncooperation of a medical source"; (3) "[h]ighly technical or specialized medical evidence that [the ALJ] need[s] is not available from [the claimant's] treating or other medical sources"; or (4) "[t]here is indication of a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work … ." *Id*. Although an ALJ has discretion in ordering a claimant attend a consultative examination, it is implicit within the regulation that an ALJ will not require such an examination unless it is necessary to enable the ALJ to render an informed decision. *See id*.

The Fourth Circuit has held that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986) (citations omitted). The ALJ's duty to develop the record is met when the record is adequate to make a determination regarding disability. *Woods v. Comm'r of Soc.*

---

[6] The Commissioner will expand or decrease the 12-month medical record retrieval if "there is a reason to believe that development of an earlier period is necessary or unless [the claimant] say[s] that [their] disability began less than 12 months before [filing their] application." 20 C.F.R. § 416.912(b)(1).

13

Case 7:22-cv-00711-RSB-CKM Document 17 Filed 03/05/24 Page 14 of 15 Pageid#: 838

*Sec.*, No. 6:12-CV-00014, 2013 WL 4678381, at *5 (W.D. Va. Aug. 30, 2013) (citations omitted).

On March 22, 2021, Karen presented to a consultative examination with Dr. Downing regarding her mental impairments. R. 723–25. Subsequently, Dr. Downing provided a written opinion regarding Karen's mental functioning. *Id*. The ALJ summarizes Dr. Downing's notes and opinion, but the only reason provided by the ALJ for why she did not find Dr. Downing's opinion persuasive is that a MMSE was not completed due to Karen's lateness to the appointment and taking up appointment time by talking about topics not directly related to the assessment. R. 16, 725. If the absence of the results of a MMSE was decisive regarding the ALJ's determination of persuasiveness of Dr. Downing's medical opinion, then it follows that the ALJ, through her fact-finding ability, should have required Karen to return to Dr. Downing for such examination. As the ALJ ordered a consultative examination with Dr. Downing relating to Karen's mental impairments, I assume this (complete) examination was a necessary element of the ALJ's analysis. Accordingly, I find that such failure to further develop the record requires remand for further investigation and analysis into the opinion evidence.

Karen further argues that the ALJ made determinations regarding her mental RFC without adequate support from the medical evidence resulting in the ALJ "playing doctor." *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017). I agree. There is a notable lack of analysis or discussion regarding Karen's RFC, including the medical opinions, except for boilerplate conclusions and summaries of the evidence. Even if such conclusions regarding Karen's RFC are appropriate, this Court cannot meaningfully review how the ALJ came to such a result without the required discussion and analysis of the available evidence. Accordingly, I find that the ALJ

14

failed to create a "logical bridge" between the evidence and her conclusions regarding Karen's RFC requiring remand for further analysis and discussion by the ALJ.

## CONCLUSION

For the above reasons, it is **RECOMMENDED** that an order be entered **GRANTING** Karen's Motion for Summary Judgment, ECF No. 12; **DENYING** the Commissioner's Motion for Summary Judgment, ECF No. 14; **REMANDING** the Commissioner's final decision denying Karen's SSI claim; and **DISMISSING** this case from the Court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Robert S. Ballou, United States District Judge.

The Clerk is directed to serve a copy of this Report and Recommendation to all counsel of record and any unrepresented parties.

Entered: March 5, 2024

C. Kailani Memmer
United States Magistrate Judge